BEER, Judge.
Plaintiff-appellee, Alvin Pierre, filed this claim for damages against Earl F. Suhre, Sr., R. E. Neumann, Inc. (Suhre’s employer) and Neumann’s insurer, United States Fidelity and Guaranty Company, for injuries resulting from an automobile collision.[1] Trial on the merits resulted in judgment being rendered from the bench against defendants-appellants on the liability issue. A few weeks thereafter, the court determined that Pierre’s general damage award should be set at $15,000. Appellants contend that the trial court erred in its finding of liability and then abused its discretion in awarding general damages in the amount of $15,000.
The accident occurred shortly before 7:00 a. m. on October 17, 1974, at the “T” intersection of the River Road and Hooker Access Road in St. Charles Parish. The weather was fair and clear. Preparatory to making a left turn from River Road to Hooker Access Road, Suhre claims to have decelerated to 15-20 mph and engaged the turning indicator. Just short of the inter *1303 section, he noticed two oncoming cars in the left or downriver lane of River Road. The first was close to the intersection, and the second (Pierre’s) was approximately 125 feet behind the first. He continued at 15-20 mph without braking and, as soon as the first vehicle passed, he executed a moving left turn and accelerated. Pierre, however, contends that he was thereby obliged to swerve his vehicle into the oncoming (upriver) lane in an unsuccessful attempt to avoid a collision with Suhre. Consequently, his vehicle glanced off the rear of Walter Mellerine’s vehicle and collided head on with that of F. E. Vasderling. There was no contact between the Suhre and Pierre vehicles. Suhre testified that he first became aware of the accident when informed of same by his passenger after they had traveled approximately 150 feet on Hooker Road.
Pierre testified that he was approximately 100 feet from the intersection and traveling about 40 mph when he saw Suhre make the left turn across his lane. If Suhre did signal a turn, he did not see it. He “touched” his brakes and swerved.[2]
Suhre’s passenger, Cozzins, testified to hearing the squeal of brakes after they had traveled about 100 feet on Hooker Road. He looked back and saw plaintiff’s car hit a rut on the edge of the downriver lane of River Road and bounce across into oncoming traffic where it was hit by a truck.
Walter Mellerine’s vehicle was traveling behind Suhre’s truck. On direct examination, Mellerine testified that he did not see Suhre’s indicator light or brake light before his vehicle made the left turn. He stated that he saw Pierre’s oncoming car and anticipated the collision when Suhre turned left. Before Pierre swerved, Mellerine accelerated to avoid involvement of his vehicle. Even so, Pierre hit Mellerine’s rear bumper just as the Mellerine vehicle was about even with the intersection.
Suhre contends that he fulfilled the twofold duty imposed by LSA — R.S. 32:104(A&B): appropriate signal and turning when such a maneuver could be executed with reasonable safety. He further contends that Pierre was negligent in breaching a two-fold duty to keep a proper lookout and to maintain a safe speed and proper control of his vehicle.
To reverse, we must conclude that the trial court manifestly erred in finding that this record supports Pierre’s version of Suhre’s negligent actions and fails to support Suhre’s claim that Pierre was contribu-torily negligent.
It is well settled that the burden rests heavily on the left-turning motorist to explain how the accident occurred and to show that he was free from negligence. Louisiana Power and Light Company v. Doussan, Inc., 235 So.2d 122 (La.App.4th Cir. 1970). Accord, Fernandez v. Aetna Casualty & Surety Company, 180 So.2d 828 (La.App.4th Cir. 1965).
The giving of a signal is immaterial if the turn can not be made safely, and our inquiry must be less with respect to whether an emergency stop could have been made than whether the left turning driver could safely negotiate the turn without causing observable motorists to execute an emergency stop. Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App.4th Cir. 1975). In Casimere, which involved a speeding plaintiff, we observed:
“As to any right to assume other motorists will obey the law, this right flows to right of way motorists and lessens their duty of lookout at intersections. On the contrary, a greater duty of look-out is imposed on left-turning motorists.” 324 So.2d at 862.
The trial court concluded that Suhre had failed to overcome the evidentiary burden properly imposed upon a left-turning motorist and that Pierre’s evasive action was a reasonable response to the apparent emergency created by Suhre’s actions. We conclude that the trial court’s appreciation *1304 and analysis of the evidence of liability is supported by the record and is not manifestly in error.
The trial court awarded $15,000 in unitemized general damages for “pain and suffering.”
Pierre was hospitalized for eleven days following the accident. His injuries were diagnosed as low back sprain and a hairline fracture of the transverse process.[3]
The deposition of the attending orthopedist, Dr. Hamilton, was the only expert medical evidence. Dr. Hamilton testified that the sprain was more significant than the fracture but that neither injury was medically significant.
On the third day of his hospitalization, Pierre was able to get up from bed, exercise and walk about. The doctor believed that Pierre was “psychologically overplaying the existing trauma” and that within two months from the date of the accident Pierre’s condition had sufficiently improved to the extent that he could resume his paper route and his job as a die cutter. Dr. Hamilton felt that the injury should have taken no more than three months to completely heal and that the low back sprain had, in fact, cleared as of December 16, 1974 — two months post-accident, although Pierre contended that he was unable to return to his job as a die cutter until January and did not return to his paper route at all.
Although the trial court’s written reasons for judgment mention the length of plaintiff’s hospital stay (11 days) and the length of his alleged disability (5 months), emphasis was placed on the deposition testimony indicating the doctor’s surprise that Pierre returned to work as soon as he did, considering the injury. Careful analysis of Dr. Hamilton's deposition (particularly at page 51, lines 2-22) suggests that the trial court may have either misread or misinterpreted the doctor’s comment. Dr. Hamilton stated that his surprise was related, not to the seriousness of the injury, but to his subsequently incorrect assumption that Pierre’s “excessive reactions” would be an indication of his unwillingness to return to work within a reasonable time. Pierre’s inappropriate and dramatic behavior and his resistance to physio-therapy caused Dr. Hamilton to believe (erroneously, he acknowledges) that Pierre would be slow in returning to work.
At any rate, what is most apparent from this record is the fact that there is no conflict to resolve with respect to the medical expert testimony or other evidence of Pierre’s alleged injury. Dr. Hamilton was the treating physician and the only medical expert called to testify.
Based upon all of the evidence in this record, we conclude that the trial court has manifestly erred in its general damage award of $15,000. Indeed, this record is hard pressed to support an award of one-third of that amount, and, were we setting the award, it would be substantially lower than one-third of the amount awarded.
However, we must accord Pierre his full Coco v. Winston[4] prerogatives, and, though we are strongly of the view that a $5,000 award is considerably higher than is justified by this record, we acknowledge that such an amount represents the stretehed-out maximum limit of an award that we would not disturb.
Accordingly, the judgment of the 29th Judicial District Court for the Parish of St. Charles is amended so as to reduce the general damage award to $5,000 and, thus amended, is, in all other respects, affirmed.

AMENDED AND AFFIRMED.

. This suit was consolidated for trial with plaintiffs workman’s compensation suit against the Times-Picayune which third-partied defendants-appellants.

. Defendant introduced an excerpt from plaintiffs deposition at p. 60 in which he stated that he had no chance to apply his brakes.

. The transverse process is a small process of bone which extends outward laterally from each lumbar vertebra and whose function is muscle attachment.

. 341 So.2d 332 (La. 1976).